IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. PJM 23-61 |
| | * | |
| DONNELL KELLY, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |
| | ******* | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its undersigned counsel, hereby submits the following memorandum in aid of sentencing in the above-captioned case, which is scheduled for October 2, 2024 at 2:00 p.m. For the reasons set forth below, **the Government requests that the Court impose a sentence of 121 months incarceration** for Donnell Kelly (the "Defendant"). The Government also requests that the Court order **$2,081,202.00 in restitution**. The Government asks that the Court impose a **three-year period of supervised release**.

The Government's recommended sentence is sufficient, but not greater than necessary, to achieve the sentencing goals set forth in 18 U.S.C. § 3553.

### Background

**I.     Procedural Background**

On February 22, 2023, a grand jury returned an indictment against the Defendant for one count of conspiracy to commit arson, in violation of 18 U.S.C. § 844(n), four counts of arson, in violation of 18 U.S.C. § 844(i), one count of felon in possession of a destructive device, in violation of 18 U.S.C. § 922(g)(1), one count of interference with commerce by robbery, in violation of 18

1

U.S.C. § 1951, and one count of possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c).  ECF No. 1.

The Defendant had his arraignment on March 24, 2023.  ECF No. 29.  On March 24, 2023, the Defendant was released pre-trial on conditions.  ECF No. 30.

On February 6, 2024, this Court set the Defendant's trial for June 17, 2024.  ECF No. 62.

On June 6, 2024, the Defendant pled guilty to the first count in the Indictment pursuant to a plea agreement.  ECF No. 87.

After the Defendant plead guilty, the government sought a bail review hearing because of the Defendant's violation of pre-trial conditions.  On August 30, 2024, the Defendant waived his bail review hearing, and Judge Quereshi entered an order of detention by agreement.  ECF No. 108.

## II. Stipulated Statement of Facts

The Government and the Defendant entered into a plea agreement.  ECF No. 87.  In the plea agreement, the parties stipulated and agreed that, if this case had proceeded to trial, the Government would have proven the following facts beyond a reasonable doubt.

Between January 2021 and January 2022, the Defendant, **DONNELL KELLY ("KELLY")** agreed and conspired with co-defendant **Stephen Kennedy** ("**Kennedy**") as well as other co-conspirators to firebomb 7-Eleven convenience stores in Maryland and Virginia to obtain cash contained in ATMs located therein.  After setting fire to the stores with homemade "Molotov Cocktail" destructive devices, the co-conspirators would return to the closed stores at night and break into the ATMs, resulting in cash losses of more than $249,100 and property damage totaling at least $1,832,000.  For each of the below arsons, **KELLY** and **Kennedy** knowingly created a substantial risk of death or bodily injury to the store's occupants.

On January 6, 2021, **KELLY** and **Kennedy** approached the 7-Eleven store at 6404 Auth Road in Suitland, Maryland.  After a store clerk triggered a lock to prevent his entry, **Kennedy** threw several incendiary devices at the exterior front entry door while **KELLY** stood by a nearby clothes donation bin with a bag containing additional devices.  Other customers were inside the building, which suffered damage from the attack but did not close for repairs.  **KELLY** and **Kennedy** fled following the attack, but **KELLY's** and **Kennedy's** DNA was later obtained from the bag containing the unused devices.

On January 16, 2021, **KELLY** and **Kennedy** approached the 7-Eleven located at 3411 Dallas Drive in Temple Hills, Maryland.  The men threw incendiary devices inside the occupied store and at propane tanks left outside the building before fleeing in a silver Infinti G35 registered to **KELLY**'s girlfriend.  The store closed due to fire damage. On the night of January 18-19, 2021, the men cut the chain securing the closed store's front door, broke into the two ATMs inside, and obtained $138,840 in cash.  On January 26, 2021, **KELLY** set fire to the Infiniti outside of Bradbury Heights Elementary School in Capitol Heights.

On May 29, 2021, **KELLY** and **Kennedy** returned to the Auth Road 7-Eleven, where they had previously deployed incendiary devices on January 6, 2021.  The resulting fire caused the store to close.  On May 30, 2021, the men attempted to break into the closed store by cutting through the store's roof, which they accessed by use of a ladder.  A private security guard hired by the store observed the men and intervened, causing them to flee.

On July 24, 2021, **KELLY** and **Kenned**y communicated on the phone 14 times.  On July 25, 2021, **KELLY** and **Kennedy** spoke on the phone at 12:14 a.m., 1:51 a.m, 2:02:47 a.m., and 2:02:59 a.m.  Then at approximately 4:30 AM, **Kennedy** went to the 7-Eleven at Three Notch Road in Mechanicsville, Maryland.  Once inside, **Kennedy** lit an incendiary device while demanding that the store clerk provide him with the cash register's contents.  Fearing for his safety, the clerk complied and gave **Kennedy** between $50 and $200 even as **Kennedy** deployed the destructive devices, causing fire to spread in the store.  **KELLY** and **Kennedy** spoke multiple times again, starting at 4:49 p.m.  In total, on July 25, 2021, **KELLY** and **Kennedy** communicated on the phone twelve separate times.

On July 27, 2021, **KELLY** and **Kennedy** communicated on the phone at 12:11 a.m. During the early morning hours of July 27, 2021, **Kennedy** returned to the closed store, cut the chain securing the front door, and removed approximately $100,000 in cash from the ATM inside.  At 7:32:57 a.m., **KELLY** and **Kennedy** communicated on the phone again.

**Kennedy** used a gold-colored GMC conversion van that night, which was later located at his Temple Hills home.  Additionally, **Kennedy**'s DNA was recovered from a Gatorade bottle that had been consumed during the ATM larceny.

On January 3, 2022, **KELLY, Kennedy**, and co-conspirators deployed incendiary devices inside an occupied 7-Eleven on South Jordan Street in Alexandria, Virginia.  On the night of January 4-5, 2022, Alexandria Police officers saw **KELLY**, **Kennedy**, and co-conspirators arrive in two vehicles: A black Audi S5 sedan with DC license plates, and a black Audi Q5 SUV with Maryland plates registered to **Kennedy's** girlfriend and registered to their shared home address. The men fled in the two vehicles, one of which, the Audi S5, headed toward DC, crashed, and whose occupants escaped on foot.  Officers located various tools, including bolt cutters, prybars, and gas powered saws, inside the Audi S5.  **KELLY's** and **Kennedy's** DNA was located on tools obtained from the crashed car.  Records obtained from Harbor Freight Tools showed that **Kennedy** purchased many of the tools on January 4, 2022, at the chain's Waldorf location.

A subsequent search located the Audi SUV behind a fence in the backyard of **Kennedy**'s residence in Maryland.

3

**III.     Statutory Sentencing Factors Under 18 U.S.C. § 3553(a)**

A district court must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). After calculating the range, it must consider the § 3553(a) factors before imposing the sentence. *Id.* at 49-50. "If the district court decides to impose a sentence outside the guidelines range, it must ensure that its justification supports 'the degree of the variance.'" *United States v. Evans,* 526 F.3d 155, 161 (4th Cir. 2008) (quoting *Gall,* 552 U.S. at 51).

**IV.     Guidelines Calculations**

The Government agrees with Probation that the total offense level is 28. PSR ¶ 52. The Government also agrees with Probation that the Defendant's Criminal History Category is III. PSR ¶ 60. Thus, the Defendant's Sentencing Guidelines range is **97-121 months** of imprisonment. PSR ¶ 93.

**V.     Section 3553(a) Sentencing Factors**

The Government respectfully submits that a sentence of 121 months in prison, which is at the top of the Guidelines, will be sufficient, but not greater than necessary, in light of the relevant 3553(a) factors.

**A. Nature and Circumstances of the Offense**

This factor favors a long sentence. The Defendant has admitted to a conspiracy that used Molotov cocktails to try to steal money from five separate 7-Elevens.

In participating in these arsons, he showed a disregard for human life. For example, during the July 25, 2021 arson, one of the Defendant's co-conspirators lit multiple Molotov cocktails,

4

threw them in the vicinity of the store clerk, and then ordered the clerk to hand over the cash.  A still shot from the surveillance video is below.



During the January 3, 2022 arson, the Defendant or one his co-conspirators deployed Molotov cocktails inside a 7-Eleven that was fully occupied.  Video footage from the incident—

of which a still shot is included below—shows kids running out of the store. Luckily, no one was hurt.



The Defendant also showed disregard for private property. Several of the 7-Elevens sustained large-scale damage because of the arsons. Below is a photo from the Auth Road 7-Eleven following the May 29, 2021 arson.



To avoid law enforcement detection, the Defendant also burned a car in an elementary-school parking lot.



### B. History and Characteristics of the Defendant

This factor favors a long sentence. The Guidelines understate the Defendant's criminal history. The Defendant has been convicted three times as an adult. PSR ¶¶ 56-58. He received Criminal History Points for only two of those convictions. PSR ¶¶ 57-58. His first conviction—for which he did not receive Criminal History Points—was for a robbery when he was nineteen-years old. PSR ¶ 56. According to that criminal indictment, the Defendant used a handgun to rob the victim of his wallet. PSR ¶ 56. On the same day, the Defendant used a gun to rob a second victim of his cigarettes and gold necklace. PSR ¶ 56. For his other robbery conviction, the Defendant also used a handgun. PSR ¶ 57. Because the Defendant continues to commit violent crimes, the Court should impose a long sentence. Moreover, the Defendant violated the terms of his pre-trial release by not abiding by his location-monitoring requirements. The Defendant waived a bail review hearing and agreed to be detained pending sentencing.

### C. Deterrence

The factors of specific and general deterrence favor a long sentence. This period of imprisonment will be the Defendant's third. His longest sentence to date was for five years. PSR ¶ 57. That sentence did not deter him from committing additional crimes. A long sentence in this case will hopefully convince him to cease committing crimes.

As for general deterrence, a long sentence will signal to the public that this Court will not tolerate individuals setting stores ablaze with people inside, including children, and then stealing from them.

### D. Unwarranted Sentencing Disparities

This factor favors a long sentence. Co-Defendant Stephen Kennedy is proceeding to trial in January 2025. If convicted of all charged offenses, Mr. Kennedy will serve—at minimum—a

thirty-year period of incarceration. The Defendant should get a lesser sentence than Mr. Kennedy because he has pled guilty and accepted responsibility. But the Court should be mindful not to create too great of a disparity between the Defendant and Mr. Kennedy.

### VI. Supervised Release

The Government agrees with the Probation Office's recommendation that any sentence include three years of supervised release. The Government also agrees with the Probation Office's Additional Recommended Conditions of Supervision.

This is the Defendant's fourth criminal conviction, and he will need monitoring to ensure that he does not resume criminal activity. Defendant will likely need support obtaining lawful employment after a long period of incarceration.

### VII. Restitution

As agreed to in the plea agreement, the Government requests that the Court order the Defendant to pay $2,081,202.00 in restitution to 7-Eleven. The Government has repeatedly requested that 7-Eleven provide information for where restitutions should be made. 7-Eleven has not yet responded, but the Government hopes to provide this information at the sentencing hearing.

### **CONCLUSION**

For the foregoing reasons, and additional information that may be presented at the sentencing hearing, the Government respectfully requests that the Court sentence the Defendant to 121 months in prison to be followed by three years of supervised release.

                Respectfully Submitted,

                Erek L. Barron
                United States Attorney

By:           /s/_____

                Christopher M. Sarma
                Joshua A. Rosenthal
                Assistant United States Attorneys